**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FILED

AUG 17 2018

CLERK, US DISTRICT COURT
NORFOLK, VA

**JEFFREY WILLIAM SMITH,**
*No. 1494875,*

        **Petitioner,**

v.

                                 **Civil Action No. 2:17cv617**

**HAROLD W. CLARKE,**
*Director, Virginia Department*
*of Corrections,*

        **Respondent.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

    Petitioner Jeffrey Smith is a Virginia inmate sentenced to imprisonment for life plus a period of 52 years, following his conviction on various robbery and firearms offenses arising from an armed robbery and shoot-out with police. His federal petition for habeas corpus challenges the state habeas courts' interpretations of Virginia law, the sufficiency of the evidence against him, and the effectiveness of his trial counsel. Respondent moved to dismiss the petition, and the matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure.

    Smith has properly exhausted several of his sufficiency of the evidence and ineffective assistance of counsel claims, but he does not plausibly allege entitlement to federal relief under the deferential standard of 28 U.S.C. § 2254(d). Other claims are procedurally defaulted, and Smith has not demonstrated cause or prejudice sufficient to excuse the default and permit federal

review.  Accordingly, this Report RECOMMENDS that the court GRANT Respondent's motion (ECF No. 12), and DISMISS the Petition (ECF No. 1).

## I.    STATEMENT OF THE CASE

Following a jury trial, the Circuit Court for the City of Portsmouth, Virginia, convicted Smith of armed burglary, robbery, use of a firearm in the commission of a robbery, attempted capital murder, use of a firearm in the commission of attempted capital murder, shooting a firearm from a vehicle so as to endanger others, wearing a mask in public, maliciously shooting at a law enforcement vehicle, and misdemeanor destruction of property.  Sentencing Order (ECF No. 14-1).  Final judgment was entered on May 10, 2014.  The court sentenced Smith to life in prison plus an additional 52 years' imprisonment.  Id.

Smith appealed his conviction to the Court of Appeals of Virginia, which denied the appeal.  Order (ECF No. 14-3).  His first argument on appeal was that the evidence was insufficient to prove he was inside the victim's residence at the time of the burglary and robbery or that he encouraged or participated in the offenses.  Appellant's Br. at 9 (ECF No. 14-2).  In denying his appeal, the Court of Appeals summarized the evidence relevant to his argument and concluded that it was competent, not inherently incredible, and sufficient to support his convictions.

Smith also argued in his appeal that the evidence was insufficient to prove he was the individual who fired his weapon at the police because the officer's identification testimony was not credible.  The Court of Appeals also summarized that evidence, ultimately concluding it was not inherently incredible and sufficient to support Smith's conviction.

Smith next filed a petition for appeal in the Supreme Court of Virginia, which was refused.  Order (ECF No. 14-4).

On September 28, 2016, Smith timely sought a writ of habeas corpus in the Portsmouth

Circuit Court. Smith asserted the following claims:

(a) Trial counsel failed to challenge the admissibility of the identification.

(b) Trial counsel failed to request proper jury instructions, specifically an instruction for assault on a police officer.

(c) Trial counsel failed to use important evidence to impeach testimony

(d) Trial counsel failed to investigate and prepare an adequate defense by failing to visit the crime scene, obtain photographs of the area, obtain an expert, or use his private investigator to investigate the victim of the robbery.

(e) Trial counsel failed to object to improper jury instructions.

(f) Trial counsel failed to argue meritorious issues to establish the conviction was not supported by the evidence.

(g) Prosecutorial misconduct: the prosecutor knowingly used perjured testimony from Officer Aguilar.

(h) Petitioner's right to due process was violated when the circuit court did not let the jury know that petitioner's brother was equally culpable in the crime.

(i) Petitioner's right to due process was violated when the Commonwealth failed to prove the issue of identity.

(j) Petitioner's right to due process was violated when the Commonwealth failed to establish "Nathan Smith was the actual instigator and perpetrator of the shooting."

(k) Petitioner's right to due process was violated when the Commonwealth failed to exclude a reasonable hypotheses of innocence that petitioner fled because he was in trouble with the law, that he did not have the requisite intent, and that he did not know Aguilar was a law enforcement officer.

State Pet. at 4-21 (ECF No. 14-5.).

The Circuit Court denied and dismissed Smith's habeas petition. Order (ECF No. 14-6).

The Circuit Court dismissed his claim of prosecutorial misconduct, claim (g), and his due

process claims (h), (j), and (k), because they were not raised on appeal and therefore not proper

for review in a petition for habeas corpus under Virginia law. Id. at 4 (citing Slayton v. Parrigan,

3

205 S.E.2d 680, 682 (Va. 1974). The court also noted that, in Virginia, sufficiency of the evidence claims are properly brought on appeal rather than by petition for a writ of habeas corpus; consequently, it refrained from considering these claims as well. Id. (citing Henry v. Warden, 576 S.E.2d 495, 496 (Va. 2003)). The Portsmouth Circuit Court proceeded to consider Smith's six remaining claims, all of which addressed alleged ineffective assistance from his trial counsel, against the standard established in Strickland v. Washington, 466 U.S. 668, 687 (1984).

The state habeas court rejected Smith's claim (a)[1] because it found that the attorney did not provide ineffective assistance by failing to challenge an identification as unduly suggestive when it was not, in fact, unduly suggestive. Order at 6-8 (ECF No. 14-6). The court also held, related to claim (b), that it was not deficient performance for his attorney to have failed to request a jury instruction for assault of a police officer because such a request would not have been granted. Id. at 7-8. The court also held, when addressing claim (c), that it was not deficient performance for his attorney to have made the tactical decision to refrain from attempting to impeach a witness at trial with non-material variations in his testimony at a preliminary hearing. Id. at 8-9. The court went on to hold there would have been no reasonable probability in a changed outcome from the trial if Smith's attorney had drawn out that difference in the witness' testimony. Id. at 10. The court held, in its analysis of claim (d), that the investigation Smith's attorney conducted before trial was reasonably thorough and therefore did not amount to inadequate performance. Id. at 12-13. Regarding claim (e), in light of the fact that the trial judge did not abuse the broad discretion he had to instruct the jury, the state habeas court found it was not inadequate performance for Smith's counsel to refrain from objecting to the instruction, "Life means life," particularly when Smith made no showing of how such an instruction prejudiced

---

[1] The court here uses the numbering conventions relied on by the state habeas court. Smith has used a different scheme of numbering in his federal petition.

him. Id. at 12-13. Finally, regarding claim (f), the Supreme Court found it was not inadequate performance for Smith's attorney to have presented the arguments he did to the jury and to omit the arguments Smith claims should have been included. Id. at 14-15. Id. Thus, the Circuit Court dismissed Smith's Petition in its entirety, having dismissed some claims on procedural grounds and examined the rest on their merits against the appropriate legal standard. The Supreme Court of Virginia subsequently refused a petition for appeal of the Circuit Court's dismissal on October 23, 2017. Order (ECF No. 14-8).

On December 20, 2017,[2] Smith timely filed his federal petition for a writ of habeas corpus in this court. His claims generally mirror those raised in state court but are re-numbered here for clarity:[3]

(1)      The Portsmouth Circuit Court erred when it found his claims not raised on appeal were barred from review by Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974). Also, he argues he was denied his rights to due process when the prosecuting attorney used perjured testimony against him at trial. Pet. at 9 (p. 20 to ECF No. 1).

(1a)      The Circuit Court "abuse[d] its discretion by not allowing the defense to let the jury know that Nathan Smith was equally culpable in the crime." Id. at 11 (p. 22 to ECF No. 1).

(1b)      The evidence establishing Smith as the person who committed the crimes related to entering Pope's home and robbing him was insufficient. Id. at 13 (p. 24 to ECF No. 1).

(1c)      Officer Aguilar's testimony identifying Smith as the shooter was inherently incredible and therefore insufficient to convict him of the crimes related to the shootings. Id. at 15 (p. 26 to ECF No. 1).

---

[2] Respondent does not dispute that Smith's Petition was timely filed. See Resp't's Br. (ECF No. 7).

[3] This recitation of Smith's claims is paraphrased from his 47-page Petition (ECF No. 1).

(2)     "The Circuit Court was plainly wrong and unreasonably misapplied established federal law when it instructed the jury that 'life means life' and counsel's failure to object to such instruction was outside the wide range of professional competence under <u>Strickland v. Washington</u>." <u>Id.</u> at 17 (p. 28 to ECF No. 1) (citing 466 U.S. 668 (1984)).

(3)     The evidence establishing Smith as the person who committed the crimes related to shooting at Officer Aguilar was insufficient. <u>Id.</u> at 22 (p. 33 to ECF No. 1).

(4)     His attorney rendered constitutionally ineffective assistance by failing to "request a jury instruction for a lesser included assault of a police officer instruction." <u>Id.</u> at 26 (p. 37 to ECF No. 1).

(5)     The police officers' methods of identifying Smith were "unduly suggestive." <u>Id.</u> at 28 (p. 39 to ECF No. 1).

(6)     His attorney rendered constitutionally ineffective assistance by failing to "present an adequate defense." <u>Id.</u> at 32 (p. 43 to ECF No. 1).

(7)     His attorney rendered constitutionally ineffective assistance by failing to "use false and perjured testimony to impeach Officer Aguilar." <u>Id.</u> at 34 (p. 45 to ECF No. 1).

This court has jurisdiction under 28 U.S.C. § 2254, and venue is proper because Smith's conviction occurred in the Eastern District of Virginia. <u>See</u> 28 U.S.C. §§ 127, 2241(d). Respondent filed a motion to dismiss, arguing that Smith's claims are without merit. <u>See</u> Resp't's Br. (ECF No. 14). The filing included the required notice to pro se parties under <u>Roseboro v. Garrison</u>, 528 F. 2d 329, 329-30 (4th Cir. 1975). <u>See</u> Notice (ECF No. 15). Smith responded to the motion. Pet.'s Br. (ECF No. 16). The motion to dismiss is therefore ripe for judicial review.

6

## II.    RECOMMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### a.    Smith failed to exhaust or procedurally defaulted several of the claims asserted in his federal Petition.

Petitions for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254 challenge a state's custody over a petitioner on the grounds that such custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before applying for federal habeas relief, however, a petitioner must first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1). Therefore, before a state prisoner can apply for federal habeas relief, he must first give the state court an opportunity to consider alleged constitutional errors occurring in the state proceeding. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

Here, Smith included two of his insufficiency of the evidence claims in his appeal to the Virginia Court of Appeals, which decided those claims on their merits, and he also included those claims in his petition for an appeal to the Virginia Supreme Court, which refused his petition.[4] He presented his ineffective assistance of counsel claims to the Portsmouth Circuit Court in his petition for a writ of habeas corpus. That court denied his petition and dismissed all six ineffective assistance claims in a detailed, written opinion. The Virginia Supreme Court later refused a petition for appeal without comment. Thus, these sufficiency and ineffective assistance claims are all properly exhausted.

---

[4] A claim presented on direct appeal cannot be reconsidered on collateral review under Virginia law. See Henry v. Warden, 576 S.E.2d 465, 487 (Va. 2003). This court therefore considers the sufficiency of the evidence claims to have been properly exhausted after presentation to the Virginia Supreme Court in Smith's petition for appeal of his conviction.

His present claim (2) contains both an ineffective assistance claim that <u>was</u> presented to the Circuit Court in his state habeas petition and a due process claim that <u>was not</u> presented to the Circuit Court. He alleges it was a constitutional violation for the trial court to have instructed the jury, in response to a question about how long a life sentence is, that, "Life means life." <u>See</u> Pet. at 17 (p. 28 to ECF No. 1). Although Smith exhausted his claim that it was ineffective assistance of counsel to have failed to object to that instruction, <u>see</u> Order at 12-13 (ECF No. 14-6), he did not exhaust his present claim that the instruction itself was a violation of his rights to due process. That portion of claim 2 is therefore not properly exhausted.

Also, his federal petition's claim (5) contains a due process claim that was not presented either on direct appeal to the Virginia Court of Appeals or on collateral review to the state habeas court. He alleges it was a constitutional violation for the trial court to have admitted evidence related to the identification of him as a suspect that was "unduly suggestive" in violation of his constitutional rights. <u>See</u> Pet. at 28 (p. 39 to ECF No. 1). Although Smith exhausted his claim that it was ineffective assistance of counsel to have failed to object to the identification, <u>see</u> Order at 6-7 (ECF No. 14-6), he did not present any claim that the identification itself was a violation of his rights to due process. The due process portion of the claim is therefore not exhausted.

When a petitioner failed to present a claim to every state court available to him because of a procedural bar in the state's law, that claim "is properly treated not as unexhausted, but as simultaneously exhausted and procedurally defaulted." <u>Clark v. Clarke</u>, 648 F. App'x 333, 338–39 (4th Cir. 2016) (citing <u>Gray v. Netherland</u>, 518 U.S. 152 (1996); <u>Baker v. Corcoran</u>, 220 F.3d 276 (4th Cir. 2000)). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state

law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray, 518 U.S. at 161). When a claim is simultaneously exhausted and procedurally defaulted, review in a federal habeas court remains available if there is some proper excuse for the procedural default. Clark v. Clarke, 648 F. App'x 333, 338–39 (4th Cir. 2016) (citing Gray, 518 U.S. at 162; Baker, 220 F.3d at 288). A proper excuse can be established by a showing of cause for the default and consequent prejudice or that a fundamental miscarriage of justice would result from not excusing the default. See Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998).

The Portsmouth Circuit Court refused to consider the equivalent of what Smith labels in his federal petition as claims (1), (1a), and (1c) on the grounds that he had waived them by not raising them on direct appeal of his conviction. See Order at 4 (ECF No. 14-6). Although Smith attempts to link these claims to federal due process violations, his arguments supporting them are limited to complaints related to the state habeas court's application of Virginia law to refuse these claims. See Pet. at 9-12, 15-16 (pp. 20-33, 26-27 to ECF No. 1). Ordinarily, "it is not the province of the federal habeas court to re-examine state-court determinations on state-law questions." Estelle v. Maguire, 502 U.S. 62, 67-68 (1991); Weeks v. Angelone, 176 F.3d 249, 262 (4th Cir. 1999). Thus, when a petitioner's claim rests solely on interpretation of state law and statutes, it is not cognizable on federal habeas review. Weeks 176 F.3d at 262. Additionally, when a claim is dismissed by a state habeas court on the basis of an "adequate and independent" state law procedural ground, it is improper for the federal court to resuscitate and consider the claim. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991) (holding that a claim dismissed on a state procedural rule is procedurally barred on federal habeas review). The rule in Slayton requiring an issue to have been raised on direct appeal to be cognizable in a petition for habeas corpus is an adequate and independent state law ground for dismissal. So a claim

expressly dismissed by a state court on that basis is procedurally defaulted.  See Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998).

Smith has made no effort to establish either a showing of cause and prejudice for his default or that a fundamental miscarriage of justice would result from not reviewing these claims. The court's own review of the record also discloses no basis to excuse the default. Because Smith failed to exhaust his due process claims and procedurally defaulted claims (1), (1a), and (1c), those claims cannot be heard in this court.

The remainder of this Report will consider Smith's properly exhausted claims:

(1b)    The evidence establishing Smith as the person who committed the crimes related to entering Pope's home and robbing him was insufficient. Pet. at 15 (p. 26 to ECF No. 1).

(2)    Smith's trial attorney was constitutionally ineffective when he failed to object to the trial court's instruction to the jury that "life means life." Id. at 17 (p. 28 to ECF No. 1).

(3)    The evidence establishing Smith as the person who committed the crimes related to shooting at Officer Aguilar was insufficient. Id. at 22 (p. 33 to ECF No. 1).

(4)    His attorney rendered constitutionally ineffective assistance by failing to "request a jury instruction for a lesser included assault of a police officer instruction." Id. at 26 (p. 37 to ECF No. 1).

(6)    His attorney rendered constitutionally ineffective assistance by failing to "present an adequate defense." Id. at 32 (p. 43 to ECF No. 1).

(7)    His attorney rendered constitutionally ineffective assistance by failing to "use false and perjured testimony to impeach Officer Aguilar." Id. at 34 (p. 45 to ECF No. 1).

Once a petitioner's state remedies have been properly exhausted, a federal court still may not grant relief on any claim adjudicated on the merits by the state court, unless the adjudication

10

"resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts."   28 U.S.C. § 2254(d)(1)-(2).[5]   Therefore, the court is obliged to analyze Smith's exhausted claims under 28 U.S.C. § 2254(d) by assessing the reasonableness of the state courts' reasoned decisions affirming Smith's conviction and denying his state petition for a writ of habeas corpus.  See Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (holding that the federal habeas court looks to the last explained state court judgment).[6]

**b.     The Virginia Court of Appeals correctly assessed the sufficiency of the evidence.**

An essential element of the right to due process secured by the Fourteenth Amendment is that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."  Jackson v. Virginia, 443 U.S. 307, 316 (1979) (citing In re Winship, 397 U.S. 358 (1970)).   Therefore, a petitioner who alleges that the evidence was insufficient to sustain a conviction has stated a constitutional claim cognizable in a federal habeas corpus proceeding.  Id. at 321.

---

[5] A state court's decision is contrary to clearly established federal law if the court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts.   Williams v. Taylor, 529 U.S. 362, 412-13 (2000).   A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case.  Id. at 413.  A state court makes an unreasonable determination of fact when its application of the law depends, in whole or in part, on a factual finding that is not supported by evidence in the record.  See Wiggins v. Smith, 539 U.S. 510, 528 (2003).

[6] The U.S. Supreme Court recently elaborated on the issues addressed in Ylst.  In Wilson v. Sellers, the Court held that, although the presumption is that an unexplained affirmance of the lower court's decision is based on the same reasoning as that used by the lower court, a party can rebut that presumption by making a showing that the higher court relied on different reasoning, i.e. "alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." 138 S. Ct. 1188, 1192 (2018).  Because no such showing was made in this case to rebut the Ylst presumption, this court "looks through" to the reasoned opinions of the Virginia Court of Appeals on the sufficiency of the evidence claims and the Portsmouth Circuit Court's Order on the state habeas petition for the ineffective assistance of counsel claims.

In reviewing a sufficiency of the evidence claim, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Id.</u> at 319 (emphasis in original). The reviewing court must consider circumstantial as well as direct evidence, and allow the prosecution the benefit of all reasonable inferences from the facts proven to those sought to be established. <u>United States v. Tresvant</u>, 677 F.2d 1018, 1021 (4th Cir. 1982).

As the Supreme Court has expressly recognized, it is wholly the responsibility of the fact-finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences. <u>Jackson</u>, 443 U.S. at 319. In <u>Wright v. West</u>, the Supreme Court expounded upon <u>Jackson</u>, stating:

> In <u>Jackson</u>, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that "<u>all of the evidence</u> is to be considered in the light most favorable to the prosecution"; that the prosecution need not affirmatively "rule out every hypothesis except that of guilt"; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

505 U.S. 277, 296-97 (1992) (emphasis in original) (internal citations omitted).

Here, the Court of Appeals of Virginia conducted a full review of Smith's claim, and concluded that there was sufficient evidence to convict him. Thus, Smith is only entitled to relief if that determination was an unreasonable application of the above-cited Supreme Court precedent. The undersigned recommends the finding that it was not.

In his claim (1b), Smith argues the evidence presented at trial was insufficient to prove he entered Pope's house. Pet. at 13 (p. 24 of ECF No. 1). Presumably, he is complaining that the evidence was therefore insufficient to have proven him guilty on the crimes related to the

unlawful entry into the house, attacking Pope inside the house, and removing property from the house, i.e. armed burglary, robbery, and use of a firearm in the commission of a robbery. See Order at 1-2 (ECF No. 14-3). The Court of Appeals analyzed the evidence against Smith, and its sufficiency, in a detailed written opinion summarized in this excerpt:

[A]t approximately 11:45 p.m. on May 2, 2013, three masked men entered Jujuan Pope's house and robbed him at gunpoint. The men also wore latex gloves. During the incident, one of the men knocked Pope out of his wheelchair and removed a ring from Pope's finger. The men also took a box of Polo brand clothing, a box of medical supplies, and additional clothing items. During the incident, two of the men took turns pointing the gun at Pope while the other men looked through Pope's house. Pope was not able to identify the intruders.

Detective Roberto Aguilar was working one to two blocks away when he heard the call for a robbery in progress. Aguilar arrived at the location within one minute, and he saw a vehicle parked away from the curb with three men moving around the outside of the vehicle. The men appeared to be carrying boxes and bundles. Aguilar illuminated the area with a spotlight, Aguilar saw [Smith] drop an item, and [Smith] discharged a gun towards Aguilar three to four times prior to getting into the vehicle. The item [Smith] dropped was later determined to belong to Pope. Once inside the vehicle, [Smith] propped the door open, leaned out of the vehicle, and discharged the gun in the direction of Aguilar as Aguilar pursued. Additional officers responded. The vehicle crashed into a parked car, four occupants ran, and [Smith] was apprehended within two blocks. [Smith] had a black mask rolled up on the top of his head, and he was wearing an empty gun holster. A gun was recovered along the path of [Smith]'s pursuit, and the gun was owned by [Smith]. Pope's ring was recovered from [Smith]'s pocket. Officers also apprehended Nathan Smith, [Smith]'s brother, and Keon Melton. [Smith] told Detective Harrison he was not involved in the crimes and stated he was waiting to buy marijuana when Aguilar pulled up. [Smith] admitted he owned a gun, but stated it had been stolen. A DNA mixture profile was found on the gun, but the profile was not suitable for comparison. [Smith]'s hands tested positive for gunshot residue.

[Smith] testified that he was with his brother. Melton, and Cordero Taylor and that he was in the area to buy drugs. [Smith] admitted he had a firearm, but testified he removed it from his holster and placed in on the seat of the car. [Smith] testified he waited in the car while the other three men robbed Pope. [Smith] testified that after Aguilar arrived, he heard pops, and he jumped out of

13

the car.  [Smith] testified his brother fired the gun at Aguilar while they sped away from the area.  [Smith] testified the police did not recover Pope's ring from his pocket.

The jury heard the testimony of the witnesses and observed their demeanor. Although [Smith] testified the police did not recover Pope's ring from his pocket, the jury necessarily determined that [Smith]'s testimony was not credible.  Three masked men entered Pope's residence and took items, including a ring and boxes with clothing.  The robbers pointed a gun at Pope.  Less than one minute after receiving the call of a robbery in progress, Aguilar saw [Smith] and two additional men loading boxes into a car.  The boxes belonged to Pope.  Upon seeing Aguilar, [Smith] and the additional men fled.  [Smith] was apprehended within two blocks, and he had Pope's ring in his pocket.  Based upon a review of the evidence, there was sufficient evidence supporting the jury's decision that [Smith] entered Pope's residence and participated in robbing Pope.   The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that [Smith] was guilty of common law burglary and robbery.

Id. at 2-3.

The evidence presented at trial, which the Virginia Court of Appeals accurately summarized, was sufficient for a reasonable trier of fact to find that Smith entered the house without permission, attacked Pope, and took property from the home.  Pope testified that three men entered his home without permission.  Trial Tr. at 81-82 (Jan. 7, 2014).  They were wearing masks and had a handgun.  Id. (Jan. 7, 2014).  Pope was not able to distinguish one robber from another, id. at 91 (Jan. 7, 2014), but he did testify that one of the robbers took a ring off his hand. Id. at 82-83 (Jan. 7, 2014).  This same ring was later recovered from Smith's pocket after his arrest.  Id. at 83, 188-89 (Jan. 7, 2014).  The men took other items from Pope's house, including clothes, shoes, and medical supplies.  Id. at 83-90 (Jan. 7, 2014).  Many of these items were later recovered from the car Smith and the other robbers used to attempt to flee the scene of the robbery.  Trial Tr. at 23-27 (Jan. 8, 2014).  After Officer Aguilar spotted Smith and the other robbers on the street outside Pope's home, Smith dropped a box containing shoes in order to

14

draw a gun and shoot at Officer Aguilar. See Trial Tr. at 114, 142-43 (Jan. 7, 2014). These shoes were later recovered and were identified as having been stolen from Pope's house. Trial Tr. at 89 (Jan. 7, 2014) (Pope identifying an exhibit as a photograph of shoes the robbers took from his home); Trial Tr. at 37-39 (Jan. 8, 2014) (police officer identifying the same shoes as having been recovered from the ground near shell casings at the location "where the pursuit started").

Additionally, Officer Aguilar positively identified Smith as the person who fired a gun at him. Trial Tr. at 114-123 (Jan. 7, 2014). He fired those shots after Aguilar found him and the other robbers loading the stolen goods into the getaway vehicle. Trial Tr. at 112-14 (Jan. 7, 2014). After being taken into custody, Smith was found to have a black holster for a handgun in his waistband, and a gun was found in a bush along the route Smith took while fleeing police on foot. Trial Tr. at 176-80 (Jan. 7, 2014).

The jury relied on this evidence to identify Smith as one of the men who entered Pope's house without Pope's consent. Smith had the ring stolen off Pope's hand when he was arrested. Officer Aguilar observed him with property in his hands that was later identified as stolen from Pope's house. Finally, there was evidence that the robbers brandished a weapon while in Pope's home. Smith fired a weapon at an officer just moments after leaving Pope's house. He was later found with a holster for a pistol, and a pistol was recovered along the route Smith took while evading police. The evidence is not inherently incredible or such that no rational trier of fact could have convicted him. The Court of Appeals' conclusion that this evidence was sufficient to support Smith's conviction for armed burglary, robbery, and use of a firearm in the commission of a robbery was not contrary to or based on an unreasonable application of federal law, nor was it an unreasonable determination of fact. See 28 U.S.C. § 2254(d). Accordingly, Smith has not

15

plausibly alleged a due process violation resulting from the sufficiency of the evidence establishing his identity as one of the men who entered Pope's house and robbed him at gunpoint.

Smith also argues in his claim (3) that the evidence establishing his identity as the person who shot at Officer Aguilar was insufficient to convict him.  Pet. at 22 (p. 33 of ECF No. 1). Presumably, he is complaining that the evidence was therefore insufficient to have proven him guilty on the crimes related to the shooting, i.e. use of a firearm in the commission of a robbery, attempted capital murder, use of a firearm in the commission of attempted capital murder, shooting a firearm from a vehicle so as to endanger others, maliciously shooting at a law enforcement vehicle, and misdemeanor destruction of property.  Order at 1-2 (ECF No. 14-3). Again, the Court of Appeals exhaustively documented the record supporting its rejection of this argument.

> Aguilar testified that when he arrived at the scene, there was nothing obstructing his view of the men and their vehicle.  Aguilar testified that after he turned on his spotlight, a man dressed in black with a black item on the top of his head fired at him.  Aguilar testified he "got a good look" at the shooter's face because he was looking at him.  Aguilar testified he kept his eyes on the shooter as the shooter got into the vehicle.  Aguilar testified that after the initial shots, he ducked to the level of the dashboard and continued to follow the vehicle.  After the vehicle crashed and the occupants exited the car, Aguilar kept his eye on the shooter and followed the shooter.  Within two blocks, [Smith] was apprehended by additional officers. [Smith] was wearing all black clothing and a rolled-up mask on his head when he was apprehended.  [Smith]'s gun was found in a bush along the path he fled. [Smith] testified that Nathan, his brother, was the shooter, but when Nathan was apprehended, he was wearing a white shirt and wore his hair in long dreadlocks. Aguilar identified [Smith] as the shooter and testified [Smith] was "absolutely" the shooter.  Although the DNA on the gun was not suitable for testing and Nathan's hands were also positive for gunshot residue, Pope testified the men took turns holding the gun and pointing it at him.

> The jury heard the testimony of the witnesses and observed their demeanor.  The jury was aware of the circumstances when Aguilar observed the shooter, but

determined that Aguilar's identification testimony was credible. Aguilar arrived at the scene, turned on the spotlight of his vehicle, and saw the men. Aguilar got a good look at the shooter's face and followed the shooter after the vehicle crashed. According to Aguilar, the shooter was wearing all black with a black item on the top of his head. [Smith] was apprehended within minutes, and he was wearing all black with a mask rolled up on the top of his head. [Smith]'s brother was wearing white and wore his hair in long dreadlocks. There was sufficient evidence supporting the jury's decision .that [Smith] was the shooter. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that [Smith] was guilty of attempted capital murder, shooting from a vehicle so as to endanger others, and maliciously shooting at a law enforcement vehicle.

Id. at 4-5.

The evidence presented at trial, which the Virginia Court of Appeals accurately summarized, was sufficient for a reasonable trier of fact to find that Smith fired a gun at Aguilar, both during their initial confrontation and while Smith was in the vehicle fleeing from the officer. See generally Trial Tr. at 114-123 (Jan. 7, 2014) (testimony of Officer Aguilar). Officer Aguilar gave the following testimony at Smith's trial, in which he identifies Smith definitively as the shooter:

Question: Now, sir, as Jeffery Smith took those shots at you, were you able to tell what he was wearing?

Answer: Yes.

Qurestion: What type of clothing was he wearing?

Answer: He was all dark, all black. He had a black, long-sleeved shirt. I said it was a sweatshirt, black jeans and black hat; and I first thought it was like one of the—like a black paper cap, loose as opposed to a cap turned around backwards.

Question: Was it on the top of his head?

Answer: Yes, sir.

Question: Were you able to see what type of hairstyle the person had?

Answer: It was kind of pushed up. I mean, I couldn't see all of it, but I didn't see anything—even if somebody has long hair, I couldn't see any hair or anything—come out of underneath it.

Question: No signs of long hair?

Answer: No, sir.

. . .

Question: Are there any distinguishable features between Mr. Jeffery Smith and his brother, Nathan Smith?

Answer: Primarily would be the hair.

Question: What type of hair did Nathan Smith have?

Answer: He had long, like dreadlocks.

Question: All right; and the person shooting at you, did they have long dreadlocks?

Answer: No, sir.

Question: And again, you're certain of who that person was?

Answer: Yes, absolutely. I had my spotlight on him. It hit up his facial features. I was able to identify him. I'm not I don't mean to sound flip or anything, but something that intense, you tend to focus pretty well, and there is no doubt in my mind.

Trial Tr. at 121-22 (Jan. 7, 2014). After the first volley of gunfire, Smith and the other robbers entered the vehicle and left the scene. While the vehicle was driving away, Smith kept his car door ajar and fired more shots at Officer Aguilar:

Answer: He was in the right rear passenger side, and I could see him clearly, because he had gotten into the vehicle. He was actually kind of—he had the right rear passenger door propped open. He was kind of like sitting sideways, with his butt cheeks sitting on the side of the seat, had his arm out, kind of bracing it against the door, and he was reaching back and firing at me. I could still see the flash and hear the popping.

18

Question: He was still shooting at you while you were chasing the vehicle?

Answer: Yes, sir.

Trial Tr. at 123 (Jan. 7, 2014).

One of the bullets Smith fired struck a parked car, causing some minor damage. Trial Tr. at 101-03 (Jan. 7, 2014) (testimony of the vehicle's owner); Trial Tr. at 101-10 (Jan. 8, 2014) (testimony of the ballistics expert). After being taken into custody, Smith was found to have a black holster for a handgun in his waistband, and the gun that fired the bullet that damaged the car that night was found in a bush along the route Smith took while fleeing police on foot. Trial Tr. at 176-80 (Jan. 7, 2014). Additionally, Smith was found after his arrest to have chemicals on his hands indicating he had been in close proximity to a gun when it was fired. Trial Tr. at 95-97 (Jan. 8, 2014). The expert witness testified this evidence was consistent with the conclusions that Smith had either fired a gun or been in close proximity to a gun when it was fired prior to his arrest. Id.

These facts were sufficient for the jury to have found him guilty of committing the crimes related to firing the pistol after having been discovered by Officer Aguilar, i.e. use of a firearm in the commission of a robbery, attempted capital murder, use of a firearm in the commission of attempted capital murder, shooting a firearm from a vehicle so as to endanger others, maliciously shooting at a law enforcement vehicle, and misdemeanor destruction of property.

Since Smith's identity was established by sufficient evidence both as one of the men who entered Pope's house and stole property from him as well as the man who fired the pistol at Officer Aguilar, damaging a bystander's vehicle, Smith's rights to due process were not violated when he was found guilty and convicted of these offenses. The Virginia courts made no

19

misapplications of the law or unreasonable findings of fact when they found that the evidence used to convict Smith was sufficient.  No relief is therefore appropriate on these claims.

c.     **Smith has not established that the Portsmouth Circuit Court was incorrect under the AEDPA standard when it held that he was not denied constitutionally effective assistance of counsel at his trial.**

In the four remaining ineffective assistance of counsel claims, the Portsmouth Circuit Court identified and applied the appropriate legal standard, the Strickland test.  What remains, then, is an assessment of the court's fact finding and the application of those facts under the Strickland test.  The state court's factual findings are presumed correct.  Only if Smith can establish an unreasonable determination of fact by clear and convincing evidence, may this court consider his habeas claims and award relief.  Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008) (citing 28 U.S.C. § 2254(d)).

In reviewing an ineffective assistance of counsel claim, the relevant inquiry is whether the petitioner's attorney's "unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986).  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 687.  In order for Smith to succeed on his ineffectiveness claims, he must satisfy both the "performance" and the "prejudice" prongs of the two-part test set forth in Strickland, 466 U.S. at 687.[7]  To satisfy the "performance" prong of the test, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  To satisfy the "prejudice"

---

[7] As both prongs of the test are "separate and distinct elements" of an ineffective assistance claim, Freeman must satisfy both requirements of the test to prevail on the merits.  Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994); see also Strickland, 466 U.S. at 697.

prong of the test, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.[8] "Although Strickland is a two-prong test, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016) (citing Strickland, 466 U.S. at 697).

In addition to the presumption of reasonableness accorded to counsel's decisions, because the Supreme Court of Virginia rejected Smith's claims, review in this court is "doubly deferential." Burt v. Titlow, 134 S. Ct. 10, 13 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)); see, e.g., Burr v. Lassiter, 513 F. App'x 327, 340 (4th Cir. 2013) (unpublished) ("[W]here the issue is whether the state court has unreasonably applied Strickland standards to an ineffective assistance of counsel claim, 'double deference' is required – deference to the state court judgment granting deference to trial counsel's performance."); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003). "If this standard is difficult to meet, that is because it was meant to be," and "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Burr, 513 F. App'x at 341 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). Federal habeas review, as controlled by Congress' enactment of Section 2254, "exists as 'a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal.'" Id. at 5 (quoting Harrington, 562 U.S. at 102-03)). Thus, to warrant federal habeas relief, the state court must have issued a decision contrary to a "clearly established holding of [the Supreme Court]," such that the ruling "was so lacking in

---

[8] The Supreme Court went on to define a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Strickland 466 U.S. at 694.

justification that there was an error well understood and comprehended in existing law." Id. (quoting Harrington, 562 U.S. at 103). For example, in Woods, the Supreme Court reversed the Court of Appeals' grant of Section 2254 relief where defense counsel was absent from the courtroom for ten minutes of examination of a witness testifying to his client's codefendants' actions, and the state habeas court denied relief. Id. at 6 (quoting Lopez v. Smith, 135 S. Ct. 1, 4 (2014) (per curiam)) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). Applying the foregoing standard, none of Smith's ineffective assistance claims present an "extreme malfunction[] in the state criminal justice system," warranting federal habeas relief. Id. at 5.

In Smith's first ineffective assistance claim, the properly-exhausted portion of claim (2), he argues it was ineffective assistance of counsel for his attorney not to have objected at trial to the judge's instruction to jury that "life means life" when explaining the length of a life sentence. Pet. at 17-21 (pp. 28-32 to ECF No. 1).

During deliberations at the criminal trial, the jury presented a question to the trial judge, telling the judge, "We want to know exactly what is the term for a life sentence. How many years is the term for a life sentence?" Trial Tr. at 97 (Jan. 9, 2014). The judge responded, "Well, I know what it is, but I can't tell you; but life is life; okay? You sentence according to the instructions, but I can't get into how it's calculated; okay?" Id. at 97-98 (Jan. 9, 2014). Smith argues this was an incorrect statement of the law because it would have been more appropriate for the judge to have told the jury that a life sentence remains subject to geriatric release or executive clemency. He appears to argue that this instruction encouraged the jury to engage in

speculation that could have resulted in giving him a longer sentence.  Pet. at 17-19 (p. 28-30 to ECF No. 1).

The Portsmouth Circuit Court rejected this argument on the grounds that the written instructions included the information that he could not have been released on parole.  Order at 13 (ECF No. 14-6).  The Circuit Court held that Smith's attorney's performance was not ineffective because he did not make a futile objection.  Smith gives no reason to conclude that the mention in the instructions about the lack of parole in Virginia would have caused the jury to give him a more severe sentence than they did.  C.f. Simmons v. South Carolina, 512 U.S. 154, 161-62, (1994) (holding due process was denied where "the jury reasonably may have believed that [defendant] could be released on parole if he were not executed" because the trial court refused to permit the defendant "to provide the jury with accurate information regarding petitioner's parole ineligibility," and the state argued "that petitioner would pose a future danger to society if he were not executed").

In addition, the state habeas court found that Smith could not prove that his trial would have had a different outcome if counsel had acted differently because the objection to the instruction would have been meritless.  Order at 13 (ECF No. 14-6).  Smith has failed to identify clear and convincing evidence in the record to show these findings were unreasonable.  Because he has not overcome the double deference this court owes the Circuit Court's findings on this ineffective assistance claim, he is not entitled to a writ of habeas corpus based on it.

In Smith's claim (4), he argues his trial attorney was constitutionally ineffective by failing to request an instruction to the jury for assault of a police officer, which he argues is a lesser included offense to attempted capital murder.  He argues that the instruction would have been proper because the evidence supported a finding that he did not shoot at Officer Aguilar to

23

hit him but rather to scare him, making him more properly guilty of simple assault than attempted murder. Pet. at 26-27 (pp. 37-38 to ECF No. 1).

> The Circuit Court considered these arguments and rejected them:

> First, Code § 18.2-57, assault of a police officer, is not a lesser included offense of attempted capital murder. Under these circumstances counsel cannot be held ineffective for asking for an instruction that was not legally correct.

> The Court further finds that even if it were a lesser included offense, such a request would not have led to a reasonable probability of a different result both because the judge would not have granted the jury instruction because the evidence did not support a simple assault. Petitioner's testimony was that he was not the shooter; not that he shot at the officer with the intent to scare him.

Order at 8-9 (ECF No. 14-6) (internal citations omitted) (citing Leal v. Commonwealth, 574 S.E.2d 285, 584 (Va. 2003) (holding the ability to reject evidence does not supply the affirmative evidence necessary to support a jury instruction.); Correll v. Commonwealth, 352 S.E.2d 352, 361 (Va. 1987); Edwards v. Commonwealth, 41 Va. App. 752, 759, 589 S.E.2d 444, 447 (2003) (en banc) (noting that assault not lesser included of attempted capital murder of a police officer because the definition of law enforcement officers is different in Va. Code § 18.2-57 and § 18.2-31)).

The state court found no ineffective assistance because the lawyer cannot have been ineffective for refraining from making a request that would have been futile. Additionally, it found there was no prejudice because Smith's evidence did not justify giving the jury an instruction on assaulting an officer. Smith has failed to identify clear and convincing evidence in the record to show these findings were unreasonable. Because he has not overcome the double deference this court owes the Circuit Court's findings on this ineffective assistance claim, he is not entitled to a writ of habeas corpus based on it.

In claim (6), Smith argues it was ineffective assistance for his trial attorney not to have conducted a more thorough investigation of the case. He asserts specifically that his attorney

erred by not interviewing Pope prior to trial.  Pet. at 32-33 (pp. 43-44 to ECF No. 1).  He identifies the possibility that a prior interview could have prevented later coercion by the government, but he offers no evidence of coercion.  Id.

The Portsmouth Circuit Court rejected this claim.  It noted that, at Smith's arraignment, he told the trial judge he was fully satisfied with his counsel's performance.  Order at 10 (ECF No. 14-6).  It also noted there was no evidence to support the conclusion that any further investigation by Smith's trial counsel would have made a difference in the outcome of the trial, and that the evidence that was presented overwhelmingly established his guilt on all the crimes of which he was convicted.  Id.

It was not an unreasonable determination of fact for the Supreme Court to find that there was no inadequate performance in Smith's attorney's decision not to interview Pope or that no prejudice accrued to Smith from that decision.  Because he has not overcome the double deference this court owes the Supreme Court of Virginia's finding on this claim, it cannot be the basis basis for granting a writ of habeas corpus.

Smith's final claim is that his trial attorney did not provide him constitutionally effective assistance of counsel when he failed to use Aguilar's alleged false and perjured testimony during a preliminary hearing for a co-defendant to impeach him at trial.  Pet. at 34 (p. 45 to ECF No. 1).

The Circuit Court rejected this claim, noting that decisions on cross-examination are tactical, and generally left to counsel.  Order at 8 (ECF No. 14-6) (citing Sallie v. North Carolina, 587 F.2d 636, 640 (4th Cir. 1978)).

> A comparison of the passages at issue here illustrates the well-founded reason for this rule.  According to petitioner, at a preliminary hearing for another co-defendant Officer Aguilar stated:
>
>> The individual that was shooting at me was climbing into the right rear passenger's position of the vehicle.  As we were driving down,

25

> I could observe that same individual leaning out, kind of had his butt cheeks planted on the side of the seat with his left hand on the door.

At trial Officer Aguilar testified: "[Petitioner] got into the right rear passenger side of the four-door car as the car pulled off for where it was parked." He later testified:

> He was in the right rear passenger side, and I could see him clearly, because he had gotten into the vehicle. He was actually kind of—he had the right rear passenger door propped open. He was kind of sitting sideways, with his butt cheeks sitting on the side of the seat. He had his arm out, kind of bracing it against the door, and he was reaching back and firing at me.

This trial testimony did not materially differ from the testimony that petitioner points to from the co-defendant's preliminary hearing and the latter would not have been useful to impeach Aguilar. This testimony does not show, as petitioner suggests, that Aguilar changed his testimony about which side of the vehicle petitioner got into. Thus, counsel was not required to make this point in cross-examination.

The Court further finds that even if counsel had pointed out that Aguilar said petitioner "got" into the car at trial but said he "climbed" into the car at an another proceeding, no reasonable probability exists of a different result where Aguilar was certain that petitioner was the shooter, petitioner had gunshot residue on his hands and a holster on his body and the gun was found along the path where petitioner had fled.

Id. at 9-10. As the quoted excerpt demonstrates, it was not unreasonable for Smith's attorney to have decided against using the preliminary hearing testimony to impeach Officer Aguilar at trial. The differences in his testimony were minor and not material to Smith's case. The Circuit Court's deference to the tactical decisions of Smith's trial counsel was not unreasonable, and so Smith has not plausibly alleged entitlement to habeas corpus relief on this claim.

## III. <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned recommends that the Respondents' Motion to Dismiss (ECF No. 12) be GRANTED, and Smith's Petition (ECF No. 1) be DISMISSED with prejudice.

## IV. <u>REVIEW PROCEDURE</u>

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. <u>See</u> Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the Petitioner and provide an electronic copy to counsel of record for the Respondent.

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 17, 2018

### Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to:

**JEFFREY WILLIAM SMITH**
No. 1494875
River North Correctional Center
329 Dellbrook Lane
Independence, Virginia 24348

and an electronic copy was provided to:

**Rosemary Bourne**
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219

Fernando Galindo, Clerk

By_____
Deputy Clerk

_August 17_, 2018